JOHN ROGERS v. STATE OF NEBRASKA.

2 N. W. (2d) 529

FILED FEBRUARY 13, 1942.   No. 31163.

*John N. Baldwin,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *Clarence S. Beck, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

CARTER, J.

The defendant was charged with the murder of Wallace Richie. Upon trial of the case, the jury returned a verdict of guilty of murder in the first degree, and fixed the penalty at death. Defendant appeals.

On August 5, 1940, the defendant secured the gun with which the fatal shots were fired, and registered it. Later defendant called Wallace Richie on the telephone and asked him to pick him up in his car at Twenty-fifth and Lake streets in Omaha. Richie picked him up at that address and drove him to South Omaha. Defendant rode in the back seat of the car. After passing through the town of Ralston, defendant covered Richie with the gun and ordered him to stop the car and get out. Defendant got out of the right rear door, opened the right front door and ordered Richie to get out. Richie obeyed and as he got out he struck at defendant, whereupon defendant shot Richie four times, causing his death. Defendant drove the car away without giving any attention to Richie. Defendant later held up a filling station at Gretna and was arrested near Lincoln for that crime. He was taken to Papillion to answer for the holdup at Gretna. The officers testify that he slept on the way to Papillion. Subsequently he was returned to Omaha to answer for the murder of Richie. These, in brief, are the facts upon which defendant was convicted.

That defendant was guilty of first degree murder there can be no question, and counsel for defendant frankly concedes this to be true. This court has held many times, in conformity with statute (Comp. St. 1929, sec. 28-401), that a homicide committed in the perpetration of robbery is murder in the first degree, and in such a case the turpitude of the act supplies the element of deliberate and premeditated malice. *Pumphrey v. State,* 84 Neb. 636, 122 N. W.

19; *South v. State,* 111 Neb. 383, 196 N. W. 684; *Swartz v. State,* 118 Neb. 591, 225 N. W. 766.

We have carefully examined the record and find no error prejudicial to the defendant in it. The only question to be determined is whether the death sentence should be reduced to life imprisonment under the provisions of section 29-2308, Comp. St. 1929, the applicable part of which is as follows: "In all criminal cases that now are, or may hereafter be pending in the supreme court on error, the said court may reduce the sentence rendered by the district court against the accused, when in their opinion the sentence is excessive, and it shall be the duty of said supreme court to render such sentence against the accused as in their opinion may be warranted by the evidence."

In considering whether the sentence should be reduced, a brief history of the defendant may be helpful. Defendant was raised at Stark City, Missouri, and was twenty-two years of age on the date of the crime. He came to Omaha in October, 1939, and was married in March, 1940. The evidence shows that his wife went to Baxter Springs, Kansas, on a visit in July, 1940, and had not returned on the date the crime was committed. Defendant testifies that he received a letter from his wife in Stark City, Missouri, the day before the crime was committed, telling him that she was pregnant and in poor health and that unless he came immediately she would never return to him. Defendant says that this letter caused him to "lose his head" and brought about the perpetration of the crime. Defendant was a bootblack in a shoe shining parlor in Omaha. He had never been in any kind of trouble before and his employer testifies that he had a good reputation as a law-abiding and peaceful citizen. It probably can never be explained why this young colored boy, never before in trouble, should suddenly go berserk and engage in an orgy of crime. We have come to the conclusion, after reviewing the record, that the interests of society do not demand that the death penalty be inflicted. It seems to us that a life sentence is adequate punishment for the offense when all

the circumstances are considered. We do not desire to criticize the action of the jury, in fact they are to be commended for performing their duty as they saw it. Neither do we in any manner desire to mitigate the seriousness of the offense. The age of the defendant, his station in life, his previous reputation as a peaceful citizen and his sudden and impulsive desire to go to the side of his wife seem to us to warrant a reduction of the death sentence to one of life imprisonment. While we realize that precedents are of little value in determining a question of this kind, yet we feel that this case is so similar to *Swartz v. State, supra,* that defendant is entitled to the same considerations as were extended in that case. We are very doubtful if the taking of the life of the defendant is necessary as a deterrent against future crimes of this nature, or that it is the only adequate penalty for the crime committed, tragic as it was. We are inclined to give the defendant the benefit of that doubt.

The judgment of the district court is modified to the extent that the penalty of death is changed to imprisonment for life. As thus modified, the judgment is affirmed.

AFFIRMED: SENTENCE REDUCED.