EARL RAYMOND WISEMAN ET AL., PLAINTIFFS, V. ROBERT KELLER, STATE PROBATION ADMINISTRATOR FOR THE STATE OF NEBRASKA, ET AL., DEFENDANTS.

358 N.W.2d 768

Filed November 30, 1984. No. 84-408.

Beverly Evans Grenier and Steven D. Burns of Steven D. Burns, P.C., for plaintiffs.

Paul L. Douglas, Attorney General, and Sharon M. Lindgren, for defendants.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

The U.S. District Court for the District of Nebraska has certified the following question of law to this court: Does Neb.

Rev. Stat. § 20-148 (Reissue 1977) constitute a waiver of sovereign immunity by the State of Nebraska for actions brought in federal court under 42 U.S.C. § 1983 (1982) to protect rights under the contract clause (article I, § 10, of the U.S. Constitution) and property interests protected under the fourteenth amendment to the U.S. Constitution?

The question arises in an action brought in the federal court pursuant to § 1983 by Earl Raymond Wiseman, Robert V. Yanders, and Eleanor L. Yanders against the administrators of the Nebraska Office of Probation Administration, members of the state judiciary, and the State of Nebraska for violation of their due process rights under the fourteenth amendment to the U.S. Constitution and for violation of the contract clause found in article I, § 10, of the U.S. Constitution.

The plaintiffs were employees of the probation office in Columbus, Nebraska. On April 13, 1983, each was called to a meeting before five members of the state judiciary and asked to resign. Each did so under protest. The plaintiffs were not given notice of the purpose of the meeting, nor were they given any opportunity to hear or answer any charges made against them.

The plaintiffs sought a declaration of their rights under their contract for employment, reinstatement, backpay, and damages. They sought special damages for aggravation of preexisting heart conditions in plaintiffs Robert Yanders and Wiseman. They sought general damages to compensate them for damage to their reputations occasioned by the publicity surrounding their dismissals.

The federal court found that the plaintiffs had been deprived of a property right in their employment without due process and were entitled to a termination hearing. The injunctive relief requested was granted pending such a hearing. The state officials were held not liable for damages because they had acted in good faith as they understood the terms of the contract.

On March 29, 1984, the federal court dismissed the plaintiffs' claims for monetary damages. However, at the request of the plaintiffs, the order of March 29, 1984, was stayed pending certification of the question of state law to this court.

The issue with respect to the claim against the State of

Nebraska is whether the bar against a suit on such a claim provided by the eleventh amendment to the U.S. Constitution has been waived. In the order of March 29, 1984, the federal court found that the eleventh amendment barred such a suit under the doctrine of sovereign immunity and that § 20-148 did not "explicitly and unequivocally" act as a waiver of state immunity.

The general rules governing statutory construction and interpretation provide that, absent any indication to the contrary, words in a statute are to be given their ordinary meaning. *Kellogg Company v. Herrington*, 216 Neb. 138, 343 N.W.2d 326 (1984). If any ambiguities exist in the wording, the court will look to the legislative history to determine the lawmakers' intent. *Ebert v. Black*, 216 Neb. 814, 346 N.W.2d 254 (1984). The court will, however, avoid constructions which would lead to absurd, unjust, or unconscionable results. *Ebert, supra; Worley v. City of Omaha*, 217 Neb. 77, 348 N.W.2d 123 (1984). It will, instead, place a sensible construction upon a statute to effectuate the object of the legislative intent rather than a literal meaning which would defeat such intent. *State v. Coffman*, 213 Neb. 560, 330 N.W.2d 727 (1983).

There are, in addition, special rules which govern statutes in derogation of state sovereignty. Statutes which waive a state's sovereign immunity should be strictly construed in favor of the state. *Catania v. The University of Nebraska*, 204 Neb. 304, 282 N.W.2d 27 (1979); *Gentry v. State*, 174 Neb. 515, 118 N.W.2d 643 (1962). The court will resolve an evenly balanced uncertainty of meaning in favor of sovereignty. R. Dickerson, The Interpretation and Application of Statutes 206 (1975). This is so that " 'sovereignty may be upheld and not narrowed or destroyed, and [no law should] be permitted to divest the state or its government of any of its prerogatives, rights, or remedies, unless the intention of the legislature to effect this object is clearly expressed.' " *Catania* at 313, 282 N.W. 2d at 32.

Article V, § 22, of the Constitution of Nebraska provides: "The state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought." This provision is not self-executing; legislation is necessary to make it available. *Gentry, supra; Catania, supra;*

*State v. Mortensen,* 69 Neb. 376, 95 N.W. 831 (1903).

The eleventh amendment to the U.S. Constitution prohibits suits against a state in federal court without its consent, even by its own citizens. *Hans v. Louisiana,* 134 U.S. 1, 10 S. Ct. 504, 33 L. Ed. 842 (1889). Waiver will only be found "where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' " *Edelman v. Jordon,* 415 U.S. 651, 673, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974), quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 29 S. Ct. 458, 53 L. Ed. 742 (1909); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984).

Section 20-148 provides as follows:

(1) Any person or company, as defined in section 49-801, except any political subdivision, who subjects or causes to be subjected any citizen of this state or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska, shall be liable to such injured person in a civil action or other proper proceeding for redress brought by such injured person.

(2) The remedies provided by this section shall be in addition to any other remedy provided by Chapter 20, article 1, and shall not be interpreted as denying any person the right of seeking other proper remedies provided thereunder.

Neb. Rev. Stat. § 49-801(16) (Reissue 1978) provides that "[p]erson includes bodies politic and corporate, societies, communities, the public generally, individuals, partnerships, joint stock companies and associations."

The question, then, is whether the state is a person within the meaning of § 49-801(16) subjecting itself to suit under § 20-148. The answer depends upon the meaning ascribed to the term "bodies politic and corporate." The term must be read conjunctively, *Lindburg v. Bennett,* 117 Neb. 66, 219 N.W. 851 (1928), and any entity must fulfill both aspects to fall within its meaning. The term "body politic" refers to an association of individuals, a social compact by which the whole group

covenants with each other that all shall be governed by laws for the common good. It usually applies to the state or other public associations. *Lindburg, supra; Utah State Bldg. Comm. v. Great Amer. Indem. Co. et al.*, 105 Utah 11, 140 P.2d 763 (1943). The term "body corporate" is defined as a corporation, public or private. *Utah State Bldg. Comm., supra*; Black's Law Dictionary 159 (5th ed. 1979). It thus appears the state is a body politic but not corporate.

Recent case law supports this analysis. In *State ex rel. Dept. of Pub. Instruction v. ILHR*, 68 Wis. 2d 677, 229 N.W.2d 591 (1975), the Wisconsin Supreme Court held the state was not included in the statutory definition of "person" with respect to liability under that state's Fair Employment Act inasmuch as the state is a body politic but neither the state nor its agencies are corporate. The decision conforms to the common dictionary meaning which notes the phrase "body politic and corporate" is particularly appropriate to a public corporation with powers and duties of government, i.e., a municipal corporation. Black's Law Dictionary 159 (5th ed. 1979); Ballentine's Law Dictionary 144 (3d ed. 1969); *Student Bar Association v. Byrd*, 293 N.C. 594, 239 S.E.2d 415 (1977); *McGuire v. Bd. of Regents of N. Ill. Univ.*, 71 Ill. App. 3d 998, 390 N.E.2d 632 (1979).

The legislative history of § 20-148 indicates that the major focus of the statute was to wipe out *private* acts of discrimination by *private* employers, thus excluding the state. Judiciary Committee Hearing, L.B. 66, 85th Leg., 1st Sess. (Jan. 18, 1977).

Further support for this conclusion is found in other statutes passed by the Nebraska Legislature which specifically provide the state is subject to suit only under certain circumstances. See, e.g., Neb. Rev. Stat. §§ 24-319 (Reissue 1979), 25-1012.01 (Cum. Supp. 1984), 81-8,209 (Reissue 1981), 48-1126 (Supp. 1983), and 48-1227.01 (Supp. 1983).

There is a further reason why a suit for damages against the state may not be maintained in federal court. "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." (Emphasis in original.) *Pennhurst State School & Hosp. v. Halderman,* 465

U.S. 89, 104 S. Ct. 900, 907, 79 L. Ed. 2d 67 (1984). In the present case, even if the state had waived its sovereign immunity, that immunity would have been waived only with respect to state courts. Here, the legislative history indicates the remedy afforded by this statute is a state remedy only. The legislators purposely eliminated excess wording covered by federal enactment § 1983. "And the words stricken will be 'under color of any state or local law, statute, ordinance, resolution, regulation, custom or usage of this state.' That need not be in the provision because this is establishing a *state* remedy and not a federal remedy." (Emphasis supplied.) Judiciary Committee Hearing, *supra* at 1.

A state's waiver of sovereign immunity in its own courts is not a waiver of the eleventh amendment immunity in the federal courts. *Pennhurst, supra; O'Connor v. Slaker*, 22 F.2d 147 (8th Cir. 1927). Therefore, since the statute is silent as to allowing suit in federal court and the legislative history indicates it was intended as a state remedy, we conclude that even if the statute permitted suit against the state, that suit could only be brought in state court.

We conclude that the question must be answered in the negative. Section 20-148 did not waive the sovereign immunity of the State of Nebraska as to actions brought in federal court under § 1983 to protect rights under the contract clause (article I, § 10, of the U.S. Constitution) and property interests protected under the fourteenth amendment to the U.S. Constitution.

JUDGMENT ENTERED.

KRIVOSHA, C.J., concurring in the result.

The majority opinion correctly holds that there is insufficient evidence to establish that the State of Nebraska has unequivocally waived its sovereign immunity, and therefore it must be held that such sovereign immunity has not been waived. Having therefore determined that there has been no waiver, I do not believe it appropriate to conclude further that, even if immunity had been waived, which we say has not occurred, it was only waived in regard to state court actions and not in regard to federal court actions. In my view, the State of Nebraska has not waived its immunity either in state court or in

federal court, and therefore we should answer the question posed to us by the U.S. District Court for the District of Nebraska solely on the basis that sovereign immunity has not been waived by the State of Nebraska, without making any distinction between state court actions and federal court actions.